**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Jeremy Torres</u>

    v.                                  Case No. 22-cv-93-JL

<u>City of Manchester et al.</u>[1]

**REPORT AND RECOMMENDATION**

Before the court is plaintiff Jeremy Torres's Complaint (Doc. No. 1), which he filed in forma pauperis. The matter is before this court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2).

**Preliminary Review Standard**

The court may dismiss claims asserted by a plaintiff who is proceeding in forma pauperis, if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915(e)(2). To determine whether to dismiss a claim for failure to state a claim, the court strips away legal conclusions, takes as true the factual content in the

---

[1] The defendants listed in the Complaint are the City of Manchester, the Manchester Police Department ("MPD"), ten unnamed MPD officers, and ten unnamed MPD supervising officers.

complaint as a whole, and inferences reasonably drawn from those facts, and considers whether the plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background

Mr. Torres asserts claims in this case arising from police encounters in Manchester, New Hampshire, in 2021, which, he alleges, involved false arrests and assaults of him by Manchester Police Department ("MPD") officers.  He asserts that those incidents worsened his epilepsy and caused him to suffer severe emotional distress and Post Traumatic Stress Disorder ("PTSD").  He asserts that as a consequence of those encounters, he had to be committed to an institution and now cannot function in the community because he suffers from flashbacks as a result of his PTSD stemming from those incidents.

The first of these incidents occurred on January 7, 2021, when he was a bystander to an accident on Chestnut Street, to which two MPD officers responded, whose names he does not know.

Without provocation, probable cause, or a warrant, and after
hearing Mr. Torres say he had epilepsy, one of the officers ("MPD
Officer John Doe #1") used a stun gun or taser on him twice.  The
other officer ("MPD Officer John Doe #2") threw him to the
ground, slamming his face against the pavement, and punched him
in the head.

Mr. Torres asserts that several months later, he had further
run-ins with MPD officers which resulted in those officers
arresting him without probable cause.  He asserts he was charged
with the same crime twice on April 15, 2021, even though he was
not the "person of interest" whom the police were seeking.  His
complaint elaborates on the second incident on that date, which
occurred as he was walking down Lake Avenue on April 15, 2021.
Two MPD officers, whose names he does not know ("MPD Officer John
Doe #3" and "MPD Officer John Doe #4"), stopped him, he asserts,
falsely claiming he fit the description of someone they were
looking for.  Mr. Torres responded to their questions by saying
he was minding his own business and wanted nothing to do with the
MPD.  When they continued to press him for some identification,
Mr. Torres, holding his phone, told the officers he was calling
his lawyer.  The officers' tone of voice and questioning then
became more aggressive.  Mr. Torres began shaking.  He told the

officers he just wanted to go home, and then asked to speak with their supervisor.  At that point, the officers proceeded to assault him.[2]

Mr. Torres filed a Complaint in this case, asserting an intent to plead claims of "excessive force, failure to train, failure to supervise, failure to discipline, false statement on government documents, bias, and intimidation," arising from those police encounters.  He names as defendants the City of Manchester; the MPD; ten unnamed MPD (patrol) officers; and ten unnamed MPD supervising officers.

The court construes the allegations in the Complaint as giving rise to the following claims under 42 U.S.C. § 1983 and state tort law[3]:

    1.   On Chestnut Street on January 7, 2021, when Mr. Torres was a cooperating bystander at the scene of an accident:

        A.   MPD Officer John Doe #1 tased Mr. Torres twice, knowing he had epilepsy and could have epileptic seizures, causing harm to Mr. Torres, causing his

---

[2] The description of the April 15, 2021 incident in the Complaint appears to be incomplete.  The paragraph describing the incident (on page 4 of the Complaint) ends abruptly, as follows: "the officers did not have any description of the person they [were] looking for in the first place and the officers proceeded to assault me specifically by forcing me to the."

[3] Mr. Torres's apparent intent to assert instances of "bias" and "false statement on government documents" as grounds for seeking relief finds no apparent support in any of the facts alleged in the Complaint.

epilepsy to worsen, causing or exacerbating his PTSD, and causing severe emotional distress:

    i.   Rendering MPD Officer John Doe #1 liable under 42 U.S.C. § 1983, for the use of excessive force incident to an arrest, in violation of the Fourth Amendment;

    ii.   Rendering MPD Officer John Doe #2 liable under 42 U.S.C. § 1983,

        a.   For failing to intervene to stop the assault by MPD Officer John Doe #1 when there was a reasonable opportunity to do so, in violation of the Fourth Amendment, and

        b.   For assisting MPD Officer John Doe #1's attack by placing Mr. Torres in a vulnerable position, in violation of the Fourth Amendment;

    iii. Rendering MPD Officers John Doe #1 and John Doe #2, and their employer(s), the MPD and the City of Manchester, liable under state law for:

        a.   The intentional tort of assault;

        b.   The intentional tort of battery;

        c.   The intentional infliction of emotional distress; and

        d.   The negligent infliction of emotional distress.

B.   MPD Officer John Doe #2 threw Mr. Torres to the ground, slammed his face against the pavement, and punched him in the head, causing him harm, causing his epilepsy to worsen, causing or exacerbating his PTSD, and causing severe emotional distress:

    i.   Rendering MPD Officer John Doe #2 liable under 42 U.S.C. § 1983, for the use of excessive force incident to an arrest, in violation of the

Fourth Amendment; and

ii.  Rendering MPD Officer John Doe #1 liable under 42 U.S.C. § 1983,

> a.    For failing to intervene to stop the assault by MPD Officer John Doe #2 when there was a reasonable opportunity to do so, in violation of the Fourth Amendment, and

> b.    For assisting MPD Officer John Doe #2's attack by placing Mr. Torres in a vulnerable position, in violation of the Fourth Amendment.

iii. Rendering MPD Officers John Doe #1 and John Doe #2, and their employer(s), the MPD and the City of Manchester, liable under state tort law for:

> a.    The intentional tort of assault;

> b.    The intentional tort of battery;

> c.    The intentional infliction of emotional distress;

> d.    The negligent infliction of emotional distress.

C.    MPD Officers John Doe #1 and John Doe #2 seized and arrested Mr. Torres, without probable cause or a warrant, in violation of his rights under the Fourth Amendment,

i.    Rendering MPD Officers John Doe #1 and John Doe #2 liable for false arrest under 42 U.S.C. § 1983; and

ii.   Rendering MPD Officers John Doe #1 and John Doe #2, and their employer(s), the MPD and the City of Manchester, liable under state law for the intentional tort of false imprisonment.

2.    On Lake Avenue on April 15, 2021, MPD Officers John Doe #3 and John Doe #4 violated Mr. Torres's federal rights and engaged in tortious conduct under state law, in that:

A.    MPD Officers John Doe #3 and John Doe #4 unjustifiably and unreasonably stopped, questioned, and seized Mr. Torres, while he was not engaged in any illegal conduct, without any information showing he was a person being sought by the MPD, and without any reasonable suspicion of any criminal activity in the area, in violation of Mr. Torres's rights under the Fourth Amendment, rendering those officers liable under 42 U.S.C. § 1983;

B.    MPD Officers John Doe #3 and John Doe #4 seized and arrested Mr. Torres, without probable cause or a warrant, in violation of his rights under the Fourth Amendment,

i.    Rendering MPD Officers John Doe #3 and John Doe #4 liable for false arrest under 42 U.S.C. § 1983; and

ii.    Rendering MPD Officers John Doe #3 and John Doe #4, and their employer(s), the MPD and the City of Manchester, liable under state law for the intentional tort of false imprisonment.

C.    MPD Officers John Doe #3 and John Doe #4 used excessive force incident to an arrest of Mr. Torres, in that:

i.    MPD Officers John Doe #3 and John Doe #4 -

a.    Assaulted Mr. Torres, in violation of the Fourth Amendment, rendering them liable under 42 U.S.C. § 1983,

b.    Failed to intervene to stop the attacking officer when there was a reasonable opportunity to do so, in violation of the Fourth Amendment, rendering them liable under 42 U.S.C. § 1983, and

   c. Assisted the attacking officer by placing Mr. Torres in a vulnerable position, in violation of the Fourth Amendment, rendering them liable under 42 U.S.C. § 1983; and

  ii. MPD Officers John Doe #3 and John Doe #4 attacked Mr. Torres, causing him harm, causing his epilepsy to worsen, causing or exacerbating his PTSD, and causing him to suffer severe emotional distress, rendering them and their employer(s), the MPD and the City of Manchester, liable under state law for:

   a. The intentional tort of assault;

   b. The intentional tort of battery;

   c. The intentional infliction of emotional distress; and

   d. The negligent infliction of emotional distress.

D. In response to Mr. Torres's statements indicating that he wanted nothing to do with the MPD, was calling his lawyer, wanted to go home, and wanted to speak to the officers' MPD supervisor:

  i. MPD Officers John Doe #3 and John Doe #4 arrested Mr. Torres, in retaliation for his exercise of his First Amendment rights, rendering them liable under 42 U.S.C. § 1983 for a retaliatory arrest;

  ii. MPD Officers John Doe #3 and John Doe #4 assaulted him, failed to intervene to stop the attacking officer when there was a reasonable opportunity to do so, and/or assisted the attacking officer by placing Mr. Torres in a vulnerable position, in retaliation for his exercise of his First Amendment rights, rendering them liable under 42 U.S.C. § 1983 for a retaliatory assault; and

> iii. MPD Officers John Doe #3 and John Doe #4
> falsely imprisoned Mr. Torres, in retaliation for
> his exercise of his First Amendment rights,
> rendering them and their employer(s), the MPD and
> the City of Manchester, liable under state law for
> the intentional tort of false imprisonment.

## **Discussion**

### I. John Doe Defendants

There are no names in the Complaint for any of the MPD officers who are alleged to have arrested or assaulted Mr. Torres.  Mr. Torres has listed twenty unnamed officers, calling them "Officer Does."

The practice of suing unnamed defendants by using a pseudonym like "John Doe" is permissible where a plaintiff cannot identify the individual's name and has "no realistic means of obtaining the information outside the discovery process." Martinez-Rivera v. Ramos, 498 F.3d 3, 8 n.5 (1st Cir. 2007). Generally, the plaintiff must show that "a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information." Id. at 8.  Such circumstances may exist in cases involving allegations of the use of excessive force by law enforcement officers.  See id. at 8 n.5.

The Complaint suggests that only four unnamed MPD officers may be responsible for Mr. Torres's alleged injuries, and for that reason, this court has identified those potentially responsible officers as MPD Officers John Doe #1, John Doe #2, John Doe #3, and John Doe #4.  Plaintiff should move to amend the Complaint, as permitted by this court's orders and applicable rules, if he has more precise information regarding the names and numbers of officers involved in the incidents at issue, so that they may be added as defendants to this case.

This court cannot order the service of a summons upon any "John Does" who have not been named.  Mr. Torres may file a motion seeking permission to serve a limited number of discovery requests upon the MPD and/or the City of Manchester, for the purpose of obtaining the names of MPD Officers John Doe #1-#4, and other potentially responsible, as-yet unnamed officers who may be defendants.  Mr. Torres should then move to amend the complaint to substitute the correct name for each "John Doe," see id., by filing a motion to name and join them as defendants.

## II.   Fourth Amendment Excessive Force

To state a Fourth Amendment claim for the use of excessive force incident to an arrest, Mr. Torres must show that the

arresting officers' actions were objectively unreasonable, in
light of the facts and circumstances known to them at the time of
the use of force.  See Jennings v. Jones, 499 F.3d 2, 11 (1st
Cir. 2007); see also Graham v. Connor, 490 U.S. 386, 397 (1989).
Factors relevant to the objective reasonableness of the force
used include the "'severity of the crime at issue, whether the
suspect pose[d] an immediate threat to the safety of the officers
or others, and whether he [wa]s actively resisting arrest or
attempting to evade arrest by flight.'"  Jennings, 499 F.3d at 11
(citation omitted).

    In addition,

    "an officer who is present at the scene [of an arrest] and
    who fails to take reasonable steps to protect the victim of
    another officer's use of excessive force can be held liable
    under section 1983 for his nonfeasance," provided that he
    had a "realistic opportunity" to prevent the other officer's
    actions.

Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995) (citation
omitted).  And a "constitutional duty to intervene may also arise
if onlooker officers are instrumental in assisting the actual
attacker to place the victim in a vulnerable position."  Id. at
985 n.4.  "In such a scenario, the onlooker officers and the
aggressor officer are essentially joint tortfeasors and,
therefore, may incur shared constitutional responsibility."  Id.

    Mr. Torres has stated Fourth Amendment excessive force

claims upon which relief can be granted, with respect to the unnamed officers listed in Claims 1(A)(i), 1(A)(ii)(a)-(b), 1(B)(i), 1(B)(ii)(a)-(b), and 2(C)(i)(a)-(c). If the court receives and grants a motion to name and join MPD Officers John Doe #1-#4 as defendants, service upon them may be directed.

III. <u>Assault & Battery and Vicarious Liability</u>

"A successful assault claim requires that '(1) the defendant . . . intended to cause harmful or offensive contact to the plaintiff, and (2) the plaintiff must have been put in imminent apprehension of such contact.'" Rand v. Town of Exeter, 976 F. Supp. 2d 65, 75 (D.N.H. 2013) (citation omitted). "A defendant may be held liable for battery if '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" Id. at 75-76 (citation omitted).

In addition, under state law, "[u]nder the doctrine of respondeat superior, 'an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff.'" Tessier v.

Rockefeller, 162 N.H. 324, 342, 33 A.3d 1118, 1132 (2011)

(citation omitted).  "Conduct falls within the scope of

employment if: '(1) it is of the kind [the employee] is employed

to perform; (2) it occurs substantially within the authorized

time and space limits; and (3) it is actuated, at least in part,

by a purpose to serve the employer.'"  Id., 162 N.H. at 342-43,

33 A.3d at 1132 (citation omitted).

        The factual allegations concerning the assaults, and their

alleged impact on Mr. Torres, give rise to actionable claims of

the intentional torts of assault and battery under state law,

against the MPD officers and their employer(s) (under a theory of

vicarious liability), as summarized in Claims 1(A)(iii)(a)-(b),

1(B)(iii)(a)-(b), and 2(C)(ii)(a)-(b).  In the Order issued this

date, the court has directed service upon the named employer

defendants.  The court may also direct service of the Complaint

upon MPD Officers John Doe #1-#4 if the court receives and grants

a motion to name and join them.


IV.  <u>Emotional Distress Torts</u>

        The plaintiff has pleaded facts that assert state law tort

claims of intentional and/or negligent infliction of emotional

distress.  "The elements of a claim for negligent infliction of

emotional distress include: '(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms.'" Id., 162 N.H. at 342, 33 A.3d at 1132 (citation omitted).  To state a claim for intentional infliction of emotional distress under New Hampshire law, a plaintiff must allege facts to show that "'by extreme and outrageous conduct,'" that is, conduct which may be regarded as "'atrocious, and utterly intolerable in a civilized community,'" the defendant "'intentionally or recklessly cause[d] severe emotional distress to another.'"  Id., 162 N.H. at 341, 33 A.3d at 1131 (citation omitted).

The factual allegations concerning the assaults in January 2021 and April 2021, and the alleged impact on Mr. Torres, give rise to actionable claims of negligent and intentional infliction of emotional distress against MPD Officers John Doe #1-#4 and their employer(s), the City of Manchester and the MPD, based on a theory of their vicarious responsibility as the officers' employer (Claims 1(A)(iii)(c)-(d), 1(B)(iii)(c)-(d), and 2(C)(ii)(c)-(d)).  In the Order issued this date, the court has directed service of the Complaint upon the named employer(s). The court may also direct service of the Complaint upon MPD Officers John Doe #1-#4 if the court receives and grants a motion

to name and join them.

V.   Fourth Amendment Seizure Claims

    A.   *Terry* Stop

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  "The reasonableness of a seizure under the Fourth Amendment is determined 'by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.'"  Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 187–88 (2004).

> In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment.  "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."

Id. at 185.  If a police officer has a reasonable and articulable suspicion that a person may be involved in criminal activity, the officer may briefly stop the person to investigate further.  See id.  But such a "Terry stop" must be both justified and commensurately limited.  Id. (citing Terry v. Ohio, 392 U.S. 1 (1968)).  The stop must be "justified at its inception, and . . . reasonably related in [duration and] scope to the circumstances which justified the interference in the first

place," to be considered "constitutionally reasonable."  Hiibel, 542 U.S. at 185 (internal quotation marks and citations omitted).

The facts alleged in the Complaint regarding the initial encounter between Mr. Torres and police officers on April 15, 2021 state a claim upon which relief can be granted under 42 U.S.C. § 1983, for a violation of Mr. Torres's Fourth Amendment rights, where the detention of Mr. Torres exceeded the scope of any legitimate, investigative purpose and was unjustified by any reasonable suspicion of his involvement in criminal activity. The court may direct service of the Complaint upon MPD Officers John Doe #3 and #4 if the court receives and grants a motion to name and join them.


    B.   <u>Fourth Amendment False Arrest</u>

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  "A federal constitutional tort of false arrest — and thus an unlawful arrest under § 1983 — occurs when there is detention without probable cause and without legal process (i.e., without a valid warrant)." Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir. 2021). The existence of probable cause will bar a claim of false arrest asserted under the Fourth Amendment and § 1983.  Finamore v.

Miglionico, 15 F.4th 52, 58 (1st Cir. 2021).

> A police officer has probable cause when, at the time
> of the arrest, the "facts and circumstances within the
> officer's knowledge . . . are sufficient to warrant a
> prudent person, or one of reasonable caution, in
> believing, in the circumstances shown, that the suspect
> has committed, is committing, or is about to commit an
> offense."

Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009)

(citation omitted).  In "determining whether the officer had

probable cause, [the court] must view the circumstances from the

perspective of a reasonable person in the position of the

officer."  Id. (citations omitted).

        The facts alleged in the Complaint, regarding the seizure

and arrest of Mr. Torres in January 2021 and April 2021, state

claims upon which relief can be granted under 42 U.S.C. § 1983,

for false arrests in violation of Mr. Torres's Fourth Amendment

rights.  The court may direct service of the Complaint upon MPD

Officers John Doe #1-#4 with respect to Claims 1(C)(i) and

2(B)(i) if the court receives and grants a motion to name and

join them.


VI.   First Amendment Retaliation

        To prove a First Amendment retaliation claim, a plaintiff

must show that he engaged in constitutionally protected conduct

and that he was subjected to an adverse action by the defendant. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012).  In addition, with respect to a claim of a retaliatory arrest, the plaintiff must also "plead and prove the absence of probable cause for the arrest." Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019).

The facts alleged in the Complaint, regarding the assault and arrest of Mr. Torres in April 2021, state claims upon which relief can be granted under 42 U.S.C. § 1983, for First Amendment retaliation in violation of Mr. Torres's rights, with respect to Claims 2(D)(i)-(ii).  The court may direct service of the Complaint upon MPD Officers John Doe #3 and #4 if the court receives and grants a motion to name and join them.

VII. False Imprisonment under State Law

The Complaint's allegations of Fourth Amendment false arrest claims implicate the tort of false imprisonment.

> To prevail on a claim for false imprisonment, a plaintiff must demonstrate that: (1) the defendant acted with the intent of confining him within boundaries fixed by the defendant; (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority.

18

Ojo v. Lorenzo, 164 N.H. 717, 726, 64 A.3d 974, 982
(2013) (citations omitted).  "[P]robable cause is a defense to a
claim for false imprisonment resulting from a warrantless
detention." Id.

The facts alleged in the Complaint, which give rise to
actionable Fourth Amendment false arrest and First Amendment
retaliatory arrest claims, also state claims upon which relief
can be granted under state law for the tort of false
imprisonment, occurring on January 7, 2021 and April 15, 2021,
against MPD Officers John Does #1-#4 and the City of Manchester
and the MPD (under a theory of vicarious liability).  In the
Order issued this date, the court has directed service of the
Complaint upon the named defendants.  The court may also direct
service of the Complaint upon the officers identified here as MPD
Officers John Doe #1-#4 if the court receives and grants a motion
to name and join them.

## VIII. § 1983 Claims of Supervisory and Municipal Liability

Mr. Torres lists the MPD, the City of Manchester, and ten
unnamed supervisory MPD officers whom he seeks to hold
responsible for the injuries he suffered on January 7 and April
15, 2021, and he lists theories of municipal or supervisory

liability including "failure to train," "failure to supervise," and "failure to discipline."  With respect to his claims of violations of his federal constitutional rights, however, he has failed to plead sufficient facts to support any actionable claims of supervisory or municipal liability under 42 U.S.C. § 1983.

Generally, a supervisor or employer cannot be held liable under 42 U.S.C. § 1983 on a "respondeat superior" theory of vicarious liability for federal constitutional violations, Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021); "§ 1983 liability cannot rest solely on a defendant's position of authority."  Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014).  The liability of a supervisor or employer "'must be premised on his or her own acts or omissions' and does not attach automatically even if a subordinate is found liable." Justiniano, 986 F.3d at 20 (internal citations and brackets omitted).

Similarly, under § 1983, a city or municipality cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior or vicarious liability; the municipality itself must proximately cause the constitutional injury, through the promulgation (or tacit approval) of a municipal policy or custom, which must be the moving force behind the constitutional

violation.  See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404

(1997); Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In

other words, the plaintiff must establish "that the municipal

action was taken with the requisite degree of culpability and

must demonstrate a direct causal link between the municipal

action and the deprivation of federal rights." Brown, 520 U.S.

at 404.

> Liability will attach to the municipal employer where its
> failure to properly train its officers "amounts to
> deliberate indifference to the rights of persons with whom
> the police come into contact," and where a specific
> deficiency in training is the "moving force" behind a
> constitutional injury.  A supervisory officer may be held
> liable for the behavior of his subordinate officers where
> his "action or inaction [is] affirmatively linked . . . to
> that behavior in the sense that it could be characterized as
> 'supervisory encouragement, condonation or acquiescence' or
> 'gross negligence amounting to deliberate indifference.'"

Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002)

(citations omitted).

Here, Mr. Torres's complaint lacks any non-conclusory

allegations regarding what the City or any MPD supervisory

officers did or did not do that related to the January 7 and

April 15, 2021 incidents he describes.  Without more factual

allegations as to what those supervisors and municipal agents may

have done, or as to the existence and effect of any municipal

policy or custom relating to the alleged assaults and arrests,

the Complaint fails to state any claim of liability under 42 U.S.C. § 1983 against any MPD supervisory officers, the City of Manchester, or the MPD.  Accordingly, the district judge should dismiss without prejudice the § 1983 supervisory and municipal liability claims, including all of Mr. Torres's claims of failure to train, failure to discipline, or failure to supervise, and all of the (unnamed) MPD supervisory officers should be dropped as defendants.

## Conclusion

For the foregoing reasons, the district judge should direct: (1) that all of the Complaint's claims of municipal and supervisory liability under 42 U.S.C. § 1983, and the Complaint's unsupported assertions of "bias" and "false statements on government documents," be dismissed for failure to state a claim, without prejudice to plaintiff's ability to move to amend the Complaint; and (2) that all ten of the unnamed "Supervising Officer Does" listed in the Complaint be dropped as parties to this action.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon

motion.  Failure to file any objection within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in the written objections to this Report and Recommendation "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'"  Id. (citations omitted).

Andrea K. Johnstone
United States Magistrate Judge

October 14, 2022

cc:  Jeremy Torres, pro se