**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Jeremy Torres

    v.                                          Civ. No. 22-cv-93-JL

City of Manchester, et al.


**REPORT AND RECOMMENDATION**

In this civil rights case, self-represented plaintiff Jeremy Torres claims that he was twice arrested without probable cause and assaulted by Manchester, New Hampshire, police officers. Presently before the court for a recommended disposition is the defendants' motion for summary judgment (Doc. No. 162), to which Mr. Torres has not objected. For the reasons that follow, the undersigned Magistrate Judge recommends granting the defendants' motion.

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In conducting this review, we assess the facts in the light most flattering to the nonmovant and draw all reasonable inferences on its behalf." Philadelphia Indem. Ins. Co. v. BAS Holding Corp., 78 F.4th 53, 58 (1st Cir. 2023) (citation

omitted). "A genuine dispute is one that would permit a rational factfinder to resolve the issue in favor of either party, and a material fact is one that has the potential to affect the outcome of the suit under the applicable law." Gattineri v. Wynn MA, LLC, 63 F.4th 71, 84-85 (1st Cir. 2023) (citations and quotations omitted). The court draws all reasonable inferences from the record facts in favor of the nonmovant. Id. at 86. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Underwood v. Barrett, 924 F.3d 19, 20 (1st Cir. 2019) (per curiam) (citing Scott v. Harris, 550 U.S. 372, 377 (2007)).

## FACTUAL BACKGROUND[1]

---

[1]Where, as here, the non-movant fails to object to a summary judgment motion, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Advanced Flexible Cirs., Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 521 (1st Cir. 2015) (quotation marks omitted); see LR 56.1 ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party."); see also Lopez-Hernandez v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023) ("We have repeatedly emphasized the importance of complying with [a similar] local rule and have implored litigants to comply or ignore it at their peril.") (quotation omitted).

In accordance with the above authority, the court accepts the defendants' versions of the facts set forth in their affidavits as admitted, except where those facts are

Two separate encounters with police underlie this lawsuit. The court describes them chronologically.

## A. April 7, 2020 Arrest

On January 7, 2020 Manchester Police Department ("MPD") Patrol Officer Justin Hood responded to a report of a motor vehicle accident with unknown injury. Declaration of Officer Justin Hood ("Hood Decl.") (Doc. No. 162-2) ¶ 3. At approximately 2:21 PM, Officer Hood responded to the scene, where, based on the footage recorded by Officer Hood's body-worn camera ("Hood BWC"), it appeared a car had struck a parked car. Hood BWC (notice of thumb drive filed as Doc. No. 162-3). Officer Hood was gathering information from the driver/owners of the involved vehicles when Mr. Torres, who was off-camera at the time, shouted, "What the fuck do you need his license for?" Hood Decl. ¶¶ 4, 5.

Officer Hood observed Mr. Torres walking in the middle of the road, recording video of the accident scene with his phone. He was potentially obstructing traffic while recording on his phone, creating a possible safety issue. The accident location

---

contradicted or unsupported by the body-worn camera footage submitted as evidence. See Underwood, 924 F.3d at 20 (court "should not adopt [blatantly contradicted] version of the facts for purposes of ruling on a motion for summary judgment"); Mitchell v. Miller, 790 F.3d 73, 76 (1st Cir. 2015) ("[T]he inferences that can reasonably be drawn are limited by the existence of video evidence, . . . .").

had sidewalks on both sides of the street. Hood Decl. ¶¶ 6-8; Hood BWC Officer Hood asked Mr. Torres to get out of the road due to the risk of oncoming traffic, stating "Do you mind getting off the road, brother. Hey get out of the road for me. Get out of the road." Hood BWC. In his professional opinion, Mr. Torres was obstructing motor vehicle traffic and placing himself in danger of being struck by a motor vehicle. Hood Decl. ¶ 9-12; Deposition of Jeremy Torres ("Torres Dep.") (Doc. No. 162-4) at 27:24-29:2.

Mr. Torres did not get out of the road. Hood Decl. ¶ 9; Torres Dep. 32:2-19. Officer Hood asked Mr. Torres to get out of the road four more times; he refused and instead told Officer Hood "I'm good." Hood Decl. ¶ 10; Hood BWC; Torres Dep. 33:16-35:11. Officer Hood continued to ask Mr. Torres to leave the road, eventually repeating the request at least six times. Mr. Torres continued to refuse. Hood Decl. ¶¶ 9-11 Torres Dep. 36:13-24.

Following the multiple unsuccessful requests to Mr. Torres to leave the road, Officer Hood asked him for his license. Hood BWC; Torres Dep. 39:9-12. Mr. Torres refused this request as well. Hood Decl. ¶ 18, Torres Dep. 39:13-19. Officer Hood then took hold of Mr. Torres's right arm as he continued to walk away but would not exit the roadway. Hood Decl. ¶¶ 13-14, Hood BWC; Torres Dep. 42:1-8; 43:3-6. Mr. Torres then began yelling at

Officer Hood. Hood Decl. ¶ 15; Hood BWC; Torres Dep. 46:3-6. Mr. Torres, believing he was being assaulted, decided he would "stand his ground." Torres Dep. 37:16-20. Officer Hood told Mr. Torres that he was taking hold of his arm because he was refusing to get out of the road. Hood Decl. ¶ 16; Hood BWC; Torres Dep. 46:17-21.

Following Mr. Torres's repeated refusal to leave the roadway, Officer Hood believed that he had probable cause that Mr. Torres had violated N.H. Rev. Stat. Ann. ("RSA") § 265:39, which makes it unlawful to walk in a roadway where sidewalks are provided. Officer Hood then decided to arrest Mr. Torres. Hood Decl. ¶¶ 17-19. He told Mr. Torres to put his hands behind his back so that he could be handcuffed. Hood Decl. ¶ 20; Torres Dep. 47:3-5. Mr. Torres refused seven requests to put his hands behind his back for handcuffing. Hood Decl. ¶ 21 Hood BWC; Torres Dep. 51:1-8. Mr. Torres believed that he had a right to physically resist what he thought was an illegal arrest. Torres Dep. 53:15-54:17.

In an effort to place Mr. Torres into custody, Officer Hood forced him to the ground so he could secure his hands. Because Mr. Torres resisted by holding his arms close to the front of his body Officer Hood therefore used two closed fist strikes to

5

Mr. Torres's ribcage to effectuate the arrest. Hood Decl. ¶¶ 23-25; Hood BWC.[2]

While Mr. Torres was continuing to struggle with Officer Hood, MPD Officer Victoria Catano arrived at the scene to provide assistance. Hood Decl. ¶ 27; Torres Dep. 55:12-13. Officer Catano knelt on Plaintiff's legs to assist Officer Hood in gaining control of his arms. Hood Decl. ¶ 27; Torres Dep. 55:12-13. Mr. Torres conceded in his deposition that Officer Catano acted appropriately and did nothing wrong in her interactions with him. Torres Dep. 55:12-22.

Despite Officer Hood's warnings that he would be tased if he did not stop resisting, Mr. Torres continued to do so. Hood Decl. ¶ 28-9; Torres Dep. 56:24-57:3. Officer Hood then administered a "dry tase" (one that uses no electrodes) twice to Mr. Torres's left side. Hood Decl. ¶ 29; Hood BWC. Mr. Torres then stopped resisting and placed his hands behind his back, allowing Officers Hood and Catano to handcuff him. Hood Decl. ¶¶ 30-31; Hood BWC. Officer Hood assisted Mr. Torres in standing up and led him to a marked patrol vehicle. Hood Decl. ¶ 32, Torres Dep. 61:9-12.

---

[2] MPD standard operating procedures (SOP) authorizes officers to use non-deadly force when and to the extent it is reasonably necessary to effectuate an arrest or detention. Declaration of Robert Gravelle, ¶ 5 ("Gravelle Decl.") (Doc. No. 162-5); Manchester PD SOP VII-d (January 2020), (Doc. No. 162-6).

6

Mr. Torres was transported to the MPD for booking and charged with disorderly conduct and resisting arrest. Hood Decl. ¶¶ 34-35. At his request, he was then taken by medical personnel from MPD to Elliot Hospital for medical attention. Hood Decl. ¶ 36; Torres Dep. 194:23-195:16. He was evaluated at Elliott Hospital, where no evidence of injuries was noted. Torres Dep. 204:6-205:4. Mr. Torres also had difficulty identifying the area on his body where he had been tased, requiring the MPD officer accompanying him to show the doctors where the tasing had occurred. Torres Dep. 205:11-23.

Officer Hood used what he believed to be the minimal amount of force necessary to safely effectuate Mr. Torres's arrest and believed he was following MPD use of force policy in making the arrest. Hood Decl. ¶¶ 37-38. The designated Officer in Charge, Captain Robert Gravelle agreed after reviewing Officer's Hood use of force report and BWC footage. Gravelle Decl. (Doc. No. 162-5) ¶ 8.

**B. April 15, 2021 Arrest**

At approximately 1:37 AM on April 15th, 2021, MPD officers responded to Spruce Street for a report of a possible fight in progress. Declaration of Officer Rachel Eutzy ("Eutzy Decl.") (Doc. No. 162-7) ¶ 5; Declaration of Nathan Harrington ("Harrington Decl.") (Doc. No. 162-8) ¶ 4. MPD had received a report that an Uber Driver had scheduled a pickup at this

location and encountered a black male, approximately 40 years of age, brandishing a stick and making a comment to the effect of that he was "going to take care of him tonight." Eutzy Decl. ¶¶ 6-7. The Uber driver reported hearing a loud commotion and believing a fight was in progress. Eutzy Decl. ¶ 8.

When Officer Eutzy arrived at the scene she observed two males, both of whom matched the description provided by the Uber driver. Eutzy Decl. ¶¶ 9-10. One of the men, later identified as Mr. Torres, appeared to be walking very quickly away from Spruce Street. Eutzy Decl. ¶ 12. Officer Eutzy told Mr. Torres to stop, but he ignored her and continued walking away. Eutzy Decl. ¶¶ 13-15. Mr. Torres was heading towards an alley to avoid the police. Torres Dep. 95:21-97:6. He had observed the individual whom he believed to have been the victim of a fight holding a large stick and had initially intended to offer assistance before noticing the police had arrived. Torres Dep. 96:6-96:15.

Mr. Torres continued walking away while Officer Eutzy repeatedly shouted, "police, Stop." Eutzy Decl. ¶ 15; Torres Dep. 99:7-100:15. He eventually stopped in an alley adjacent to Spruce Street. Eutzy Decl. ¶ 16; Torres Dep. 97:1-97:18. Officer Eutzy was able to see that Mr. Torres had his left hand in his jacket pocket. She instructed him to remove his hand, which he initially hesitated to do. Officer Eutzy also asked Mr. Torres if he was involved in the fight at the Spruce Street address.

8

Mr. Torres immediately became belligerent and started raising his voice. Eutzy Decl. ¶¶ 17-20.

After Officer Dylan Naylor entered the alley to assist, Officer Eutzy explained to Mr. Torres that the police had received a report of a fight in progress and asked him for identification. Eutzy Decl. ¶¶ 21-22; Torres Dep. 101:19-102:8. Mr. Torres refused to provide any identification. Eutzy Decl. ¶ 23; Torres Dep. 108:20-110:10. Officer Naylor conducted a brief pat down to ensure that Mr. Torres did not possess a weapon. Eutzy Decl. ¶ 21; Torres Dep. 102:9-13, 104:24-105:4; Eutzy BWC (notice of conventional filing attached as Doc. No. 162-9).

Mr. Torres then became very agitated, began to raise his voice, stated that he had epilepsy, and accused the police of touching him for no reason. Due to the loud yelling, additional officers arrived in the alleyway to assist. Mr. Torres continued to yell and refused to provide any information that would allow Officer Eutzy to determine whether he had been involved in the reported altercation on Spruce Street. Eutzy Decl. ¶¶24-26; Eutzy BWC; Torres Dep. 102:14-105:10, 105:19-106:5. Officer Eutzy attempted to assure Mr. Torres that he would be released when police confirmed he was not involved in the reported fight. Eutzy Decl. ¶ 27; Torres Dep. 106:11-18; Eutzy BWC.

Mr. Torres, who testified in his deposition that he had been growing paranoid during the encounter, perceived Officer

9

Eutzy's words as threatening. Torres Dep. 106:11-19. He continued to yell and talk over Officers Eutzy and Naylor, who along with other officers, advised him several times to lower his voice given the early morning hours and their location in front of a residential apartment complex. A civilian approached the alleyway because he had heard the loud yelling and wanted to ensure that everything was alright. Eutzy Decl. ¶¶ 28-30; Torres Dep. 107:8-14, 111:3-21; Eutzy BWC.

Officer Harrington arrived at the scene and heard Mr. Torres yelling from the alley. He observed that Mr. Torres appeared to be agitated and excited. Officers still had not ascertained whether Mr. Torres had been involved in the fight that led to the police call. Harrington Decl. ¶¶ 4-11; Harrington BWC (attached to notice filed conventionally at Doc. No. 162-10). Mr. Torres was still yelling loudly at the officers after 1 a.m. Harrington Decl. ¶¶ 12-15; Eutzy Decl. ¶ 31; Torres Dep. 121:1-21. Officers continued to ask him to lower his voice and respond to questions, but Mr. Torres refused and residents began gathering in the area to investigate the source of the loud noise. Harrington Decl. ¶¶ 16-17; Eutzy Decl. ¶ 28. By this time, MPD Officers Hondros and Fazio had also responded to the alleyway to assist. Eutzy Decl. ¶ 32; Torres Dep. 18:5-18:11. MPD Officers Colburn, Pauley and Fenton were never in the alley

10

with Mr. Torres. Pltf. Interrog. Ans. (Doc. No. 162-11); Torres Dep. 18:21-20:10.

Ignoring warnings that he would be arrested if he continued to yell and make a disturbance, Mr. Torres continued. Eutzy Decl. ¶ 33; Harrington Decl. ¶ 16, 18; Eutzy BWC; Harrington BWC. Officer Eutzy advised Mr. Torres that he was under arrest and asked him to place his hands behind his back. Eutzy Decl. ¶¶ 34-35; Harrington Decl. ¶ 20; Torres Dep. 167:8-12. Mr. Torres refused to place his hands behind his back. Eutzy Decl. ¶ 35; Harrington Decl. ¶¶ 20-21. Officers Eutzy and Harrington attempted to take Mr. Torres into custody by placing him on the ground to gain control. Eutzy Decl. ¶ 36; Harrington Decl. ¶ 25. He continued to resist until Officer Harrington delivered closed hand strikes to his right mid-side abdominal area. Harrington Decl. ¶¶ 27-28; Eutzy BWC; Harrington BWC. The closed hand strikes allowed police to gain control of Plaintiff's arms and place him in handcuffs. Harrington Decl. ¶¶ 28-30. The entire use of force to get Mr. Torres under control lasted for twenty seconds. Harrington BWC; Torres Dep. 169:9-15. Mr. Torres was charged with disorderly conduct and resisting arrest. Eutzy Decl. ¶ 39.

Officer Harrington used what he believed to be the minimal amount of force necessary to safely effectuate Mr. Torres's arrest and believed he was following MPD use of force policy in

11

making the arrest. Hood Decl. ¶¶ 37-38. His superior officer, Captain Shawn McCabe, reviewed Officer Harrington's use of force report and BWC footage and concluded that the use of force complied with MPD policy and was the least amount of force necessary to effectuate the arrest. McCabe Decl. (Doc. No. 162-12).

## PRIOR PROCEEDINGS

Mr. Torres commenced this action in March 2022. Following preliminary review mandated by 28 U.S.C. § 1915 and amendment to the original complaint, the case proceeded with state common law and federal constitutional claims against City, the MPD and twelve police officers. The court subsequently dismissed the federal claims against the City and MPD. February 18, 2025 R&R (Doc. No. 61), approved March 28, 2025. (Doc. No. 62). The following federal claims, asserted pursuant to 42 U.S.C. § 1983, remain for consideration on summary judgment: false arrest, excessive force, failing to intervene and assisting other officers' illegal acts in violation of the Fourth and Fourteenth Amendments; and retaliation for protected speech in violation of the First Amendment. Mr. Torres has also brought state-law claims of assault, battery, false imprisonment, and negligent and intentional infliction of emotional distress.

## DISCUSSION

12

**A. Federal Claims**

   1. January 7, 2020 Arrest

      a. False Arrest

Mr. Torres's false arrest claim is predicated on the Fourth Amendment, which protects against "unreasonable . . . seizures" of the person. U.S. Const. amend. IV. To succeed on a false arrest claim, a plaintiff must prove that the arresting officers lacked probable cause to believe that he had committed or was committing a crime. See Jordan v. Town of Waldoboro, 943 F.3d 532, 545 (1st Cir. 2019), abrogated on other grounds by Thompson v. Clark, 596 U.S. 36 (2022). Probable cause for a warrantless arrest exists "when, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). "To determine whether an officer had probable cause for an arrest, '[courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" District of Columbia v. Wesby, 583

13

U.S. 48, 56-57 (2018) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

Here, the undisputed facts show that Officer Hood had probable cause to arrest Mr. Torres for refusing to move out of the street while he was investigating the accident to which he was dispatched. See N.H. ("RSA") § 265:39. The BWC footage conclusively showed that traffic was still active in the area, and that Mr. Torres belligerently refused repeated requests to leave the roadway. That Mr. Torres was subsequently arrested on other charges does not change the calculus. See Zinicola v. Mott MacDonald, LLC, No. 16-CV-542-JL, 2018 WL 1832408, at *11 (D.N.H. Apr. 17, 2018) (observing that "the court's probable cause analysis does not focus on the specific crime charged . . . but upon whether there was probable cause to arrest." (emphasis in original) (citing United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005) (noting that ultimate charge "is irrelevant . . . [i]f, on the facts known to the arresting officers, there was probable cause to believe he was committing another crime, the arrest was valid."))); see also Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (holding that an arrest for intent to commit robbery which lacked factual support would nevertheless be upheld because the facts and circumstances known to the arresting officer established probable cause for a firearms violation).

14

Against this legal and factual backdrop, the court concludes that Officer Hood is entitled to summary judgment on Mr. Torres's false arrest claim related to the January 7, 2020 incident. In addition, though Officer Eutzy, denoted as "John Doe No. 2," was named in this count, there is no evidence that she was present at the January 2020 incident. She is therefore entitled to summary judgment on this count as well.[3]

### b. Excessive Force

To state a Fourth Amendment claim for the use of excessive force incident to an arrest, Mr. Torres must show that the arresting officers' actions were objectively unreasonable, in light of the facts and circumstances known to them at the time of the use of force. See Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007); see also Graham v. Connor, 490 U.S. 386, 397 (1989)

In Graham, the Court outlined the basic contours and elements of an excessive force claim:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises.
>
> With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem

---

[3] The only other MPD officer involved with the January 2020 incident was Officer Catano, who is not a defendant.

15

> unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citations and internal punctuation omitted). "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

The Court also set out a non-exhaustive list of relevant factors to consider when analyzing an excessive force claim. Those factors include: the relationship between the need for the use of force and the amount of force used; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; whether the plaintiff was actively resisting; and the extent of the plaintiff's injury. See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

Given the court's finding that Officer Hood had probable cause to arrest Mr. Torres, the BWC footage showing Mr. Torres's refusal to comply with legitimate requests to move out of the roadway, and his resistance to efforts to place him under arrest, the court has little trouble concluding that Officer

16

Hood's use of force was reasonable under the circumstances. Certainly, the crime for which Officer Hood first had probable cause for arrest – unlawfully walking in a roadway when a sidewalk is available – is a relatively minor violation-level offense. See N.H. RSA 265:2. But the undisputed context shows that Mr. Torres was in the street with traffic passing while Officer Hood was the first to respond to a motor vehicle accident. Under those circumstances, Officer Hood's multiple requests for Mr. Torres to move to the sidewalk were undoubtedly reasonable. From there, it was Mr. Torres, not Officer Hood, who escalated the situation by refusing multiple requests to move to the sidewalk. After the refusal of the verbal requests, the court also finds that it was reasonable for Officer Hood to use physical persuasion to try and guide Mr. Torres off the street. When Mr. Torres chose to "stand his ground," Officer Hood was justified in trying to place him under arrest, which Mr. Torres further refused, incorrectly believing that he had the right to physically resist if he thought an arrest was unlawful.[4] See NH RSA 642:2 (making it a misdemeanor for anyone to "knowingly or purposely physically interfere[ ] with a person recognized to be

---

[4] At this point, Officer Hood had probable cause to arrest Mr. Torres for resisting arrest pursuant to NH RSA 642:2 and disorderly conduct, pursuant to NH RSA 644:2(II)(e), which makes it illegal to "Knowingly refuse[] to comply with a lawful order of a peace officer to move from or remain away from any public place."

a law enforcement official . . . seeking to effect an arrest or detention of the person . . . regardless of whether there is a legal basis for the arrest.").

Summing up the relevant factors set forth in Kingsley, Mr. Torres's refusal to follow verbal requests to leave the roadway and subsequent resistance both to being physically removed from the roadway and then to arrest reasonably required some force. The amount of force used was no more than necessary to effect the arrest. See Gray v. Cummings, No. CV 15-10276-TSH, 2017 WL 8942566, at *5 (D. Mass. Mar. 15, 2017) (finding single use of taser in "dry" mode reasonable when arrestee was resisting by refusing to release arms to be handcuffed), report and recommendation adopted, No. 4:15-CV-10276, 2018 WL 1956872 (D. Mass. Mar. 15, 2018), aff'd, 917 F.3d 1 (1st Cir. 2019).[5] Officer Hood attempted to avoid using any force by making several requests to Mr. Torres to leave the roadway. And, finally, Mr. Torres was not seriously injured by the force, as evidenced by the need for others with him at the hospital to point out where the tasing had occurred and the lack of recorded injuries.

---

[5] A dry tase is a less severe tase because the cartridge is removed prior to tasing. Johnson v. Cherokee Cnty. Bd. of Cnty. Comm'rs, No. 02:17-CV-2644-JAR, 2020 WL 1320720, at *3 (D. Kan. Mar. 20, 2020).

Accordingly. Officer Hood is entitled to summary judgment on Mr. Torres's excessive force claim. In addition, as with the claim for false arrest, though Officer Eutzy was named in this count, there is no evidence that she was present at the January 2020 incident. She is therefore entitled to summary judgment on this count as well.

### c. Assisting in Violations and/or Failing to Intervene

The court interpreted Mr. Torres's complaint as alleging Fourth Amendment violations against Officers Hood (then John Doe No. 1) and Eutzy (then John Doe No. 2) for assisting in the violation of his Fourth Amendment rights and for failing to intervene to stop those violations. As the court has already found that Mr. Torres's Fourth Amendment claims fail as a matter of law, his claims based on assistance and failure to intervene necessarily fail.

### d. First Amendment Retaliation

The court originally interpreted Mr. Torres's complaint as alleging that his April 15, 2021 arrest was in retaliation for his First Amendment activity. Report and Recommendation (Doc. No. 3) at 8-9. The court will analyze that claim when it turns to discussion of that arrest. In an abundance of caution, and given Mr. Torres's self-represented status, the court considers whether a claim of being arrested in retaliation for recording

the accident scene January 7, 2020, in violation of his First Amendment rights, can survive summary judgment.

"It is well established that claims of retaliation for the exercise of First Amendment rights are cognizable under section 1983." Gericke v. Begin, 753 F.3d 1, 6 (1st Cir. 2014) (citing Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004)). To succeed on such a claim, Mr. Torres must prove that his "conduct was constitutionally protected and was a 'substantial' or 'motivating' factor for the retaliatory decision." Id. (some internal quotation marks omitted) (quoting Powell, 391 F.3d at 17). Additionally, Mr. Torres can only succeed on this claim if he can point to "sufficient facts to establish that law enforcement lacked probable cause for arresting the plaintiff." Kynard v. Robbins, No. 24-cv-30092-MGM, 2025 WL 1473959, at *3 (D. Mass. May 22, 2025) (citing Nieves, 587 U.S. at 404).

Where, as here, the court has already determined that probable cause exists, the claim fails unless Mr. Torres can cite facts of record demonstrating that he "was arrested when other similarly situated individuals engaged in the same sort of protected speech had not been." Nieves, 587 U.S. at 406; see also Doyle v. Rumsey, 22-cv-00127-GZS, 2023 WL 2868315, at *4 (D. Me. Apr. 10, 2023) (dismissing the complaint after concluding that the plaintiff's arrest was supported by probable

cause and that "the [c]omplaint does not allege that similarly situated individuals . . . were not arrested").

Here, as discussed, Mr. Torres's arrest was supported by probable cause and there are no allegations about similarly situated individuals. His First Amendment retaliation claim therefore fails as a matter of law, entitling Officers Hood and Eutzy to summary judgment.

2. April 15, 2021 Arrest

The court interpreted Mr. Torres's complaint as asserting the same constitutional claims resulting from the April 15, 2021 incident as those resulting from the January 7, 2020 arrest: false arrest, excessive force, assisting/failure to intervene, and retaliation. The first three claims allege violations of the Fourth Amendment; the retaliation claim alleges a First Amendment violation. Report and Recommendation (Doc. No. 3) at 7-9. The court will address each claim separately, but will not repeat each claim's required legal elements, which were described in the discussion of the earlier arrest.

a. False Arrest

Before analyzing Mr. Torres's false arrest claim, the court notes that he alleges that the police lacked any reason to stop and question him in the first place. The court will address that claim in its analysis.

As previously explained, MPD was responding to a call about a possible fight in a residential neighborhood at 1:30 AM, including information about an individual holding a weapon and making threats. Mr. Torres did not dispute that a fight might have taken place. Officer Eutzy responded and saw Mr. Torres, matching the description of one of the individuals fighting. He was walking quickly away from the scene towards an alley. She and Officer Naylor attempted to speak with him, even after they explained that they were trying to investigate the fight. The undisputed record then shows that Mr. Torres, after initially refusing to cooperate, began to raise his voice, eventually yelling loudly and drawing neighbors' attention to the scene, after which he was arrested for disorderly conduct. Neither the initial stop nor the subsequent arrest violated Mr. Torres's rights.

When law enforcement personnel make "brief investigatory stops of persons or vehicles that fall short of traditional arrest . . . the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." United States v. $48,940 in United States Currency, 594 F. Supp. 3d 125, 131 (D. Mass. 2022) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).[6]

---

[6] Such temporary detentions are "known colloquially as a Terry stop." Morelli v. Webster, 552 F.3d 12, 20 (1st Cir. 2009)

Officer Eutzy's stop of Mr. Torres, after being dispatched to the scene of a possible fight, fits comfortably within this framework. See United States v. Arthur, 764 F.3d 92, 97 (1st Cir. 2014) (upholding validity of Terry stop where the officer had received a reliable, though generic, description of suspects and their approximate location, from an unconnected witness).

Next, the undisputed evidence, including BWC footage, demonstrates the existence of probable cause to arrest Mr. Torres. NH RSA 644:2(III)(a) prohibits "[m]aking loud or unreasonable noises in a public place or making loud or unreasonable noises in a private place which can be heard in a public place or other private places, which noises would disturb a person of average sensibilities." Mr. Torres was shouting at 1:30 in the morning in a residential neighborhood. Area residents, apparently hearing the commotion, came to the scene. His arrest was supported by probable cause and did not violate the Fourth Amendment.

b. Excessive Force

The court acknowledges that the charged crime – disorderly conduct – is relatively minor. See, e.g., Pliakos v. City of Manchester, No. 01-461-M, 2003 WL 21687543, at *11 (D.N.H. July

_____

(citing Terry v. Ohio, 392 U.S. 1, 21 (1968)).

15, 2003) (characterizing disturbing of the peace in excessive force analysis as "relatively minor criminal mischief"). Nevertheless, other than transitioning Mr. Torres to the ground as he resisted arrest for disorderly conduct, the only force used by any defendant was Officer Harrington's "closed-fist strikes" to Mr. Torres's abdomen as the resistance continued, after which officers were able to handcuff him. Mr. Torres reported no injuries. Furthermore, the undisputed record supports the defendants' claim that the officers' use of force did not violate MPD policy. See supra, n.2, p. 12; Raiche v. Pietroski, 623 F.3d 30, 37 (1st Cir. 2010) (considering Police Department policies to determine whether level of force was reasonable).  Accordingly, the defendants are entitled to summary judgment on this claim.

c. Assistance / Failure to Intervene

The court interpreted Mr. Torres's complaint as alleging Fourth Amendment violations for assisting in the violation of his Fourth Amendment rights and for failing to intervene to stop those violations. As the court has already found that Mr. Torres's Fourth Amendment claims fail as a matter of law, his claims based on assistance and failure to intervene necessarily fail.

d. Retaliatory Arrest

24

Mr. Torres's claim that his arrest was retaliation for his speaking out against the officers fails for the same reason his claim based on his previous arrest fails. His arrest was supported by probable cause and there are no allegations about similarly situated individuals. See Nieves, 587 U.S. at 406. His First Amendment retaliation claim therefore fails as a matter of law.

Against this legal and undisputed factual backdrop, all of the individual defendants are entitled to summary judgment on all of Mr. Torres's federal constitutional claims. While the defendants' motion relies, in part, on assertions that certain defendants were not present for certain aspects of Mr. Torres's arrests, the court need not parse out this information in light of its finding that the constitutional claims fail as a matter of law. Similarly, having found that no constitutional violation occurred, the court does not address defendants' claims of qualified immunity.

## B. State Law Claims

As previously noted, the court interpreted Mr. Torres's complaint as asserting state common law claims against the individual officers, the City and the MPD, as well federal constitutional claims against City and the MPD. The court subsequently dismissed the federal claims against the City and MPD. February 18, 2025 R&R (Doc. No. 61), approved March 28,

25

2025. (Doc. No. 62). As the defendants correctly point out, however, state law immunizes them against liability for state torts.

N.H. RSA 507-B grants municipalities and municipal employees immunity in certain circumstances. McCarthy v. Manchester Police Dep't, 168 N.H. 202, 207-08 & n.1, 124 A.3d 686 (2015). RSA 507-B:5 provides: "No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." The phrase "personal injury" is broadly defined to include "[a]ny injury to the feelings or reputation of a natural person . . . ." RSA 507-B:1, III(a).

The only exception within the chapter to RSA 507-B:5's grant of immunity is RSA 507-B:2, which provides that "[a] governmental unit may be held liable for damages . . . arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises." RSA 507-B:2; see also Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 698, 82 A.3d 225, 229 (2013) ("[W]e conclude that RSA 507–B:2 provides an exception to RSA 507–B:5 only when there is a nexus between the injury and a governmental unit's ownership, occupation, maintenance, or operation of a motor vehicle or premises."). This exception has no application to the facts of this case.

26

Although RSA 507-B:5 speaks in terms of "governmental unit[s]," another statute extends this immunity to municipal employees and officials. N.H. RSA 507-B:4, IV; accord McCarthy, 168 N.H. at 207 n.1, 124 A.3d 686. Under RSA 507-B:4, IV, a municipal employee has immunity on the same terms as the municipality itself so long as the employee acted (1) within the scope of the employee's official duties; and (2) with a reasonable belief that her actions were lawful. Currier v. Town of Gilmanton, 621 F. Supp. 3d 233, 249 (D.N.H. 2022). Regarding the second prong, the employee must subjectively believe that her conduct is lawful, and her belief must be objectively reasonable. Farrelly v. City of Concord, 168 N.H. 430, 444, 130 A.3d 548 (2015). A belief in the lawfulness of one's conduct is not objectively reasonable when the employee acts "recklessly or wantonly." Id. at 445, 130 A.3d 548.

Based on the plain language of the statute and the cases interpreting it, RSA 507-B:5 unequivocally bars the state law claims against the City and the MPD. Moreover, the officers involved in the two arrests were indisputably acting within the scope of their official duties, and there is no evidence in the record that suggests they lacked a reasonable belief in the lawfulness of their actions. See Hood Decl. (Doc. No. 162-2) ¶¶ 37-38; Harrington Decl. (Doc. No. 162-8) ¶¶ 28-29. Accordingly,

27

all defendants are entitled to summary judgment on Mr. Torres's state law claims.[7]

## CONCLUSION

Based on the foregoing, the district court should grant the defendants' motion for summary judgment (Doc. No. 162). If the district judge adopts this recommendation, the Clerk's office should be directed to enter judgment and close the case.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 19, 2026
    cc:  Mary Macwell, pro se

---

[7] In light of the court's finding that immunity bars Mr. Torres's state law claims, the court does not address the defendants' remaining arguments regarding those claims.

28